**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STACY STANTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:26-cv-00510 |
| RM & AJ DEVELOPMENT, LLC, | ) | Judge Nora Barry Fischer |
| d/b/a HAND AND STONE MASSAGE | ) | Docket No. 27 |
| & FACIAL SPA OF MCMURRAY, | ) | |
| and M AND L WELLNESS, LLC, | ) | |
| d/b/a HAND AND STONE MASSAGE | ) | |
| & FACIAL SPA OF UPPER SAINT CLAIR, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION ON MOTION TO DISMISS

## I. INTRODUCTION

Defendants, RM & AJ Development, LLC and M and L Wellness, LLC, operate beauty parlors under the name Hand and Stone Massage & Facial Spa in McMurray and Upper Saint Clair, Pennsylvania. (Docket No. 1 at ¶¶ 7, 8). Plaintiff, Stacy Stanton, worked for Defendants as an esthetician, primarily at the Upper Saint Clair location, from 2019 until 2025. (Docket No. 1 at ¶¶ 10-12, 53, 67). On or about April 17, 2025, when Plaintiff was 55 years old, Defendants reassigned her to work exclusively at the McMurray location. (Docket No 1 at ¶¶ 10, 53). The move resulted in loss of established customers and reduced earnings for Plaintiff, who resigned on or about August 17, 2025. (Docket No. 1 at ¶ 67).

On December 22, 2025, Plaintiff filed a charge of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), stating as follows:

> 1. On April 15, 2025, I was involuntarily transferred from Upper St. Clair to the McMurry [*sic*] location. The transfer and loss of clients reduced my income from commissions. On August 15, 2025, I was constructively discharged.
>
> 2. No reason was given for the transfer.
>
> 3. I believe I have been discriminated against in violation of the [ADEA], as amended, based on my age (55) and for retaliation.

(Docket Nos. 1 at ¶ 3; 19-1 at 1). The EEOC dismissed the Charge and issued a Notice of Right to Sue on December 29, 2025. (Docket Nos. 1 at ¶ 4; 19-2). Plaintiff commenced this action on March 27, 2026 by filing a Complaint asserting that Defendants violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, by demoting her (Count I), failing to promote her (Count II), retaliating against her (Count III), and constructively discharging her (Count IV). (Docket No. 1 at 12-14).

Presently before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting failure to exhaust administrative remedies as to all Counts, and failure to state a claim upon which relief may be granted as to Count IV. (Docket No. 27). The issues having been fully briefed, Defendants' Motion is ripe for adjudication. (Docket Nos. 28, 30, 32). For the reasons that follow, the Motion will be granted with respect to Count II, and otherwise denied.

## II. APPLICABLE LEGAL STANDARDS[1]

"The . . . prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue." *Ostapowicz v. Johnson Bronze*

[1] The cases cited in this Part address exhaustion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, rather than under the ADEA. However, as our Court of Appeals has explained:

> In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose--to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well. Indeed, we routinely use Title VII and ADEA caselaw interchangeably, when there is no material difference in the question being addressed.

*Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995).

*Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [, 798] (1973)). "Once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'". *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz*, 541 F.2d at 398-99). "[W]hen determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko v. United States Steel Corp.*, 992 F.3d 198, 209 (3d Cir. 2021). Ultimately, exhaustion may turn on whether "the new allegations . . . fall within the 'gravamen' of the initial charge", so that the EEOC is "put on notice" of the subsequent claim. *Id.* at 210, 211 (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). *See also Tourtellotte v. Eli Lilly and Co.*, 636 Fed. Appx. 831, 851 (3d Cir. 2016) (finding plaintiff "did not exhaust the administrative remedies for her disability discrimination claim because her complaint did not provide a basis from which the EEOC could reasonably have notice of such a claim").

## III. ANALYSIS

### A. Count I – Demotion

Seizing upon the Complaint's characterization of Plaintiff's reassignment to a less desirable location as a "demotion", Defendants point out that "[a] 'transfer' and a 'demotion' are not the same thing", and they urge that "[t]he Court should not allow Plaintiff to recast her original 'involuntary transfer' as a 'demotion' following the EEOC's dismissal of her Charge. (Docket No. 28 at 6, 7). The Court observes that even though the words have different meanings, a transfer may constitute a demotion in common parlance, particularly if it entails loss of status, opportunity

or compensation. More fundamentally, whether the adverse employment action[2] at issue is described as a transfer or a demotion is of no moment in determining whether Plaintiff has exhausted her administrative remedies with respect to that event.

The gravamen of Plaintiff's EEOC charge was that she was "involuntarily transferred" to a different location, with loss of clients and reduced income, "based on [her] age".[3] (Docket No. 19-1 at 1). The gravamen of Count I is that Defendants "chang[ed] her location, reducing her hours and interfering with her client relationships . . . based on her age". (Docket No. 1 at ¶ 71). Clearly the latter claim "falls within" the scope of the former charge. Moreover, the claim in Count I "arises from the same set of facts" (the April, 2025 reassignment), and "advances the same theory of discrimination" (based on age), as the original charge. The Court concludes that Plaintiff has exhausted her administrative remedies as to Count I, and Defendants' Motion will therefore be denied as to that Count.[4]

**B. Count II – Failure to Promote**

Plaintiff states that she "does not oppose the dismissal of [her] claim for failure to promote (Count II of the Complaint)." (Docket No. 30 at 5). Defendants' Motion will therefore be granted as to that Count.

---

[2] Defendants concede that "[a]n involuntary transfer coupled with a loss of income potentially could be an adverse action". (Docket No. 28 at 11).

[3] The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age". 29 U.S.C. § 623(a)(1).

[4] Defendants appear to argue that Plaintiff's EEOC Charge was insufficient to exhaust any claim because it did not include facts going to all of the elements of a *prima facie* age discrimination claim. (Docket No. 28 at 8-9). Defendants subsequently appear to retreat from that argument, clarifying that rather than "trying to graft the *prima facie* discrimination standards onto the Charge", their extended discussion of the *prima facie* elements is illustrative: "to demonstrate to the Court the types of facts that suggest discrimination". (Docket No. 32 at 4). In any event, to the extent that Defendants may adhere to the position that the absence from the Charge of facts sufficient to make out a *prima facie* case precludes a finding of exhaustion, the Court finds that position inconsistent with the standards articulated in the controlling Third Circuit cases cited herein at Section II.

**C. Count III – Retaliation**

Plaintiff's EEOC Charge indicates her belief that her transfer (and resulting loss of clients) was not only based on her age, but also "for retaliation" in violation of the ADEA.[5] (Docket No. 19-1 at 1). The Charge does not indicate what conduct on Plaintiff's part occasioned the retaliation. Plaintiff's Complaint supplies the missing element: Plaintiff alleges that on December 7, 2024, she emailed Defendants' owners "to complain about issues she had been experiencing at work, including age-related discrimination", and that Defendants' decision to change her work location was "induced by their intent to retaliate against Plaintiff for complaining about age discrimination." (Docket No. 1 at ¶¶ 17, 79).

Defendants contend that the Charge's omission of a reference to Plaintiff complaining about age discrimination prior to her transfer renders it insufficient to exhaust her retaliation claim. (Docket No. 28 at 11-12). Plaintiff counters that her "retaliation claim would have been addressed during a reasonable EEOC investigation of Plaintiff's Charge", because such an investigation "naturally would have discovered the circumstances that led to the change in Plaintiff's employment." (Docket No. 30 at 6, 7). Plaintiff relies upon *Hicks*, *supra*, in which the Third Circuit held that a sex discrimination claim not disclosed in an EEOC race discrimination charge might nevertheless be deemed exhausted where the race and sex claims share a close factual nexus (because they concern the same disparate treatment), and where it is inferable that the plaintiff would have told an investigator of his/her belief that sex discrimination was also a cause of the disparate treatment alleged in the charge (so that a reasonable investigation would have informed the EEOC of the sex claim). (Docket No. 30 at 6-7). *See Hicks*, 572 F.2d at 965, 966-67.[6] Here,

---

[5] The ADEA makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [§ 623]". 29 U.S.C. § 623(d).

[6] In their Reply Brief Defendants assert that *Hicks* is a "stale" case, whose precedential value "was severely diminished by *Simko*", *supra*, in which the Third Circuit held that an original disability discrimination charge did not encompass

the alleged retaliation concerns the same involuntary transfer as the age discrimination claim, and the Charge directly informed the EEOC of Plaintiff's belief that retaliation was a cause of that transfer. Moreover, based on the language of the Charge and supporting allegations of the Complaint, the Court finds it reasonable to infer that if asked about the reason for the retaliation mentioned in her Charge, Plaintiff would have informed an EEOC investigator of her age discrimination complaints to Defendants (including the December 7, 2024 email to Defendants' owners). The Court concludes that Plaintiff's retaliation claim is within the scope of her EEOC Charge (as defined by the scope of a reasonable investigation thereof), and that she has therefore exhausted her administrative remedy as to Count III. Defendants' Motion will therefore be denied as to that Count.

**D. Count IV – Constructive Discharge**

Count IV asserts a claim for constructive discharge in violation of the ADEA, echoing a statement in her EEOC Charge to the effect that she was constructively discharged on August 15, 2025.

> Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?

---

a subsequent retaliatory discharge claim even though the EEOC actually investigated the latter claim. (Docket No. 32 at 5); *see Simko*, 992 F.3d at 208, 211. *Simko* does not, however, support Defendants' position.

First, far from diminishing the precedential value of *Hicks*, *Simko* observes that *Hicks* "provides useful guidance" given "the fact-specific nature of the exhaustion inquiry", and proceeds to cite to *Hicks* multiple times in support of its analysis, without any suggestion of disagreement. And second, unlike in *Hicks* and the present case, the subsequent claim in *Simko* did not arise from the same adverse employment action as the original charge; and also unlike in the present case, the charge in *Simko* contained no reference to retaliation. *See Simko*, 992 F.3d at 211 ("The original EEOC charge and Simko's civil complaint thus address discrete adverse employment actions that occurred approximately two years apart and involved different supervisors in different departments."); *Simko v. United States Steel Corp.*, 2019 WL 6828421, at *7 (W.D. Pa. Dec. 13, 2019) ("there was no reference to retaliation in Simko's original charge at all").

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004).

Defendants argue that "Plaintiff fails to identify any facts in her Charge that support the Charge's declaration that she was constructively discharged." (Docket No. 32 at 9). According to Defendants, "the issue is not whether Plaintiff's Charge contains all of the facts required to state a *prima facie* claim for constructive discharge; the issue is that the Charge contains none of them." (*Id.*). However, as Plaintiff points out, her Charge actually "describes the main factual events that led to her constructive discharge (the involuntary relocation and loss of income)". (Docket No. 30 at 8). And the facts described therein do support a claim of constructive discharge. *See, e.g., Nolle v. Guitar Center*, 2012 WL 4857791, at *3 (W.D. Pa. Oct. 12, 2012) ("The Third Circuit [has] laid out a number of factors that may be indicative of a constructive discharge", including "a demotion or reduction of pay or benefits" and "involuntary transfer to a less desirable position".) (quoting *Lebofsky v. City of Phila.*, 394 F. App'x 935, 939 (3d Cir. 2010)).

Plaintiff's Complaint asserts the same claim, predicated on the same essential facts. (Docket No. 1 at ¶ 67) (alleging that Plaintiff resigned after she "lost nearly all her usual customers, her hours had been significantly reduced, she had been relocated, and she felt incredibly unwelcome because of her age"). The Court concludes that Plaintiff has exhausted her administrative remedies with respect to Count IV.

Defendants argue in the alternative that the Complaint fails to state a colorable claim for constructive discharge, because it fails to allege facts establishing that Defendants subjected her to conditions that would cause a reasonable person to resign. (Docket No. 28 at 14-15).[7] However,

---

[7] Defendants also assert that to plead constructive discharge, "a plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." (Docket No. 28 at 13) (citation omitted). However, this Court noted in *Nolle* that a plaintiff asserting an ADEA constructive discharge claim "need not allege the elements of a hostile work environment, but only that the 'events were sufficiently intolerable that a reasonable person would have felt compelled to resign.'" *Nolle*, 2012 WL 4857791, at *3 n.2.

read in the light most favorable to Plaintiff, the Complaint alleges facts detailing how Plaintiff's involuntary transfer to the McMurray location resulted in a substantial loss of income and opportunity. (Docket No. 1 at ¶¶ 53-67). In *Nolle*, this Court denied a motion to dismiss a constructive discharge claim under the ADEA where the Plaintiff alleged, *inter alia*, that he "suffered a significant reduction in pay" ("so severe that [he] could not continue to work for [his employer] and maintain his standard of living"); and that as a result of "an involuntary transfer to a less desirable position" he "lost his client base that he had worked to build up, and commissions from sales to them." *Nolle*, 2012 WL 4857791, at *3, *4. This Court finds that Plaintiff's similar allegations are likewise sufficient to state a claim for constructive discharge. Defendants' Motion will therefore be denied as to Count IV.[8]

## II. CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted as to Count II and denied as to Counts I, III and IV. An appropriate Order follows.

Dated: November 9, 2026

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: Counsel of record

---

[8] At the eleventh hour, Defendants proffer an additional ground for dismissal as to all Counts. In a footnote in their opening Brief in Support of their Motion to Dismiss, Defendants suggest that Plaintiff's failure to specify which Defendant effectuated her involuntary transfer – a "defect . . . common to all four of Plaintiff's claims" – further establishes that her claims should be dismissed. (Docket No. 28 at 6 n.5) (citing one case). In their Reply Brief, Defendants expand this germ of an argument to occupy nearly two pages, with citations to five cases. (Docket No. 32 at 6-8). Assuming that this argument is properly before the Court (despite its belated expansion, and Plaintiff's correspondingly limited opportunity to respond), the Court finds it unpersuasive. Transfer of an employee from the location operated by one Defendant to that operated by the other would presumably require the concurrence of both Defendants; and more generally, since the two Defendants "have the same owners and management" (Docket No. 1 at ¶ 9), it is reasonable at the pleadings stage to allow an inference that Defendants acted in concert with respect to their dealings with Plaintiff.